# 15-1002-cv

# United States Court of Appeals

*for the*

## Second Circuit

———————————————————

UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA,

*Petitioner-Appellant,*

— v. —

TAPPAN ZEE CONSTRUCTORS, LLC,

*Respondent-Appellee.*

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PETITIONER-APPELLANT

SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, New York 10019
(212) 765-2100

– and –

DECARLO & SHANLEY
533 South Fremont Avenue, 9th Floor
Los Angeles, California 90071
(213) 488-4100

*Attorneys for Petitioner-Appellant*

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION ........................................................................1

STATEMENT OF ISSUES PRESENTED
FOR REVIEW ........................................................................................................1

STATEMENT OF THE CASE..................................................................................2

      A.  The Tappan Zee Project.................................................................................2

      B.  The Jurisdictional Dispute .........................................................................3

      C.  The First Award............................................................................................5

      D.  The Second Award ......................................................................................6

      E.  The District Court Action............................................................................7

SUMMARY OF ARGUMENT ................................................................................7

STANDARD OF REVIEW ......................................................................................8

ARGUMENT
THE FIRST AWARD SHOULD HAVE BEEN
CONFIRMED AND THE SECOND AWARD
SHOULD HAVE BEEN VACATED.......................................................................8

      A.  The Arbitrator Was Not Authorized to Alter the
           First Award ..................................................................................................9

1.  The PLA Does Not Authorize the Arbitrator
    to Modify the First Award ...............................................................10

2.  The Plan Demonstrates that the Arbitrator
    Was Not Authorized to Modify the First Award ..............................13

3.  The Actions of All Involved Evince An Intention
    to Be Bound by the First Award .......................................................14

B.  The District Court's Interpretation Is Unreasonable as
    Applied to the Construction Industry ............................................18

C.  The Arbitrator Was *Functus Officio* as to the Dispositive
    Issues After the First Award...........................................................20

1.  The Arbitrator Fully Resolved the Jurisdictional Issue
    Presented ...........................................................................................21

2.  No Exception to the *Functus Officio* Doctrine is
    Warranted Here ..................................................................................23

CONCLUSION ...........................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

Collins & Aikman Floor Coverings Corp. v. Froehlich,
736 F. Supp. 480 (S.D.N.Y. 1990) .......................................................9

Colonial Penn Ins. Co. v. Omaha Indem. Co.,
943 F.2d 327 (3d Cir. 1991) .......................................................20, 23

Galli v. Metz,
973 F.2d 145 (2d Cir. 1992) .................................................................19

Hyle v. Doctor's Assocs.,
198 F.3d 368 (2d Cir. 1999) .................................................................23

Local 338, RWDSU v. Farmland Dairies, Inc.,
89 Fed. App'x 748 (2d Cir. 2003) .......................................................22

McClatchy Newspapers v. Cent. Valley Typographical
Union No. 46,
686 F.2d 731 (9th Cir. 1982) ...............................................................20

Ottley v. Schwartzberg,
819 F.2d 373 (2d Cir. 1987) .................................................................20

Porzig v. Dresdner, Kleinwort, Benson, North America LLC,
497 F.3d 133 (2d Cir. 2007) ...................................................................9

T.Co Metals LLC v. Depsey Pipe & Supply, Inc.,
592 F.3d 329 (2d Cir. 2010) ......................................................... 23-25

Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.,
931 F.2d 191 (2d Cir. 1991) .................................................................23

Wackenhut Corp. v. Amalgamated Local 515,
126 F.3d 29 (2d Cir. 1997) .....................................................................8

**Statutes and Other Authorities**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1331 ...............................................................................1

Black's Law Dictionary 1201 (9th ed. 2009)............................................17

http://www.investopedia.com/terms/s/short-form-report.asp..................................11

http://en.wiktionary.org/wiki/short_form .................................................11

Labor Management Relations Act,
    Section 301, 29 U.S.C. § 185................................................................1

New York Public Health Law § 1400.....................................................11

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The District Court had jurisdiction of this matter pursuant to Section 301 of the Labor Management Reporting Act ("LMRA"), 29 U.S.C. § 185, and 28 U.S.C. § 1331. This Court has appellate jurisdiction pursuant to 28 U.S.C. Section 1291. The appeal is from the District Court's ruling on the parties' petition and cross-petition and is from a final judgment disposing of all parties' claims, dated March 31, 2015. Notice of Appeal was timely filed on April 1, 2015.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the court below misapplied or ignored principles of contract interpretation with respect to collectively bargained agreements.

2.      Whether the court below misapplied or ignored legal principles of reviewing arbitration awards arising from collectively bargained agreements.

3.      Whether the court below misapplied or ignored the doctrine of functus officio by not confirming the arbitrator's first arbitration award dated May 4, 2014 and instead by confirming the arbitrator's second award dated May 13, 2014.

1

## STATEMENT OF THE CASE

A. <u>The Tappan Zee Project</u>

This case arises from a dispute concerning the assignment of more than 400,000 hours of construction work on the replacement for the Tappan Zee Bridge, which spans the Hudson River and connects Westchester and Rockland Counties in New York State.  (Joint Appendix ("A-__") A-7 (Pet. ¶ 2).)  The construction project is referred to as the Tappan Zee Hudson River Crossing Project (the "Tappan Zee Project" or "Project").  (<u>See</u> A-241.)  Respondent-Appellee Tappan Zee Constructors, LLC ("TZC") was awarded the contract to design and build the Tappan Zee Project.  (<u>Id.</u>)

The New York State Thruway Authority Project Labor Agreement Covering the Tappan Zee Hudson River Crossing Project ("Project Labor Agreement" or "PLA") governs work for the Tappan Zee Project.  (A-241-42.)  TZC and Petitioner-Appellant United Brotherhood of Carpenters ("UBC") are parties to the PLA.  (A-242.)  Article 10, Section 3 of the PLA mandates that all jurisdictional disputes on the Project be addressed under the National Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan").  (A-109 (§ 3(A));

2

A-242.)[1]  The purpose of the Plan is to enable employers and unions to resolve expeditiously disputes over construction work assignments without strikes, work stoppages, or other work disruptions.  (A-9 (Pet. ¶ 11); see, e.g., A-53 (Plan Preamble ¶ 2).)

B.  The Jurisdictional Dispute

A jurisdictional dispute arose when, on January 7, 2014, TZC issued a written assignment for the formwork that is part of the Tappan Zee Project.  (A-242; see also A-132-35.)  TZC assigned to Carpenters Local 279 two categories of formwork: (i) the "formwork from the top of the pile caps up to and including the pier caps," and (ii) the "formwork for all columns including the main span tower forms when over water."  (A-242; see also A-133; A-135.)

---

[1] PLA Article 10, Section 3(A), entitled "Procedure for Settlement of Disputes," provides:

> Any Union having a jurisdictional dispute with respect to Project Work assigned to another Union shall submit the dispute in writing to the Administrator, National Plan for the Settlement of Jurisdictional Disputes in the Construction Industry ("the Plan") within 72 hours and send a copy of the letter to the other Union involved, the Contractor involved, the Program Manager . . . and the County Council of the unions involved.  Upon receipt of a dispute letter from any Union, the Administrator shall invoke the procedures set forth in the Plan to resolve the jurisdictional dispute. . . .

(A-109 (emphasis added).)

3

On January 13, 2014, UBC submitted a jurisdictional dispute to the Plan, challenging the assignment of the two categories of formwork to Carpenters Local 279. (A-137-38; A-242.) The following day, UBC requested that the Plan Administrator hold in abeyance any action with respect to the jurisdictional dispute, because the parties were discussing settlement. (A-140.) On April 7, 2014, UBC advised TZC that Dockbuilders Local 1556 ("Dockbuilders") and Carpenters Local 279 had reached an agreement that all of the disputed formwork would be assigned to the Dockbuilders, and would not be claimed by Carpenters Local 279. (A-145-46.)

On April 14, 2014, the Plan Administrator advised TZC of the agreement between the two local unions and, in accordance with Article IX of the Plan, directed TZC to assign the formwork to the Dockbuilders, in accordance with the parties' agreement. (A-150-53.)

On April 15, 2014, TZC advised the Plan Administrator that it disagreed with the directive to reassign the disputed formwork to the Dockbuilders, and requested that the jurisdictional dispute be referred to arbitration for a decision. (A-155.) Arbitrator J.J. Pierson was subsequently designated as Arbitrator of the dispute under the Plan. (See A-17.) On April 28, 2014, a hearing was conducted in Ardsley, New York. (Id.) The contradictory First and Second Awards followed.

4

C. <u>The First Award</u>

Pursuant to Article V, Section 8 of the Plan, in rendering a decision, the

Arbitrator is required to address three criteria:

(a) First, whether a previous agreement of record or applicable agreement . . . governs;

(b) Only if the Arbitrator finds that the dispute is not covered by an appropriate or applicable agreement . . . he shall then consider the established trade practice in the industry and prevailing practice in the locality. . . ; and

(c) Only if none of the above criteria is found to exist, the Arbitrator shall then consider that because efficiency, cost or continuity and good management are essential to the well being of the industry, the interests of the consumer or the past practices of the employer shall not be ignored.

(A-61.)

On May 4, 2014, Arbitrator Pierson issued a four-page Award (the "First

Award") titled "AWARD," in which he found that an established trade practice in

the industry and prevailing practice in the locality required assignment of the

disputed formwork to the Dockbuilders.  (A-17-20.)  Article V, Section 7 of the

Plan provides, "The decision of the Arbitrator shall be final and binding on all

parties to the dispute."  (A-60-61.)

The Award was forwarded to the parties by the Plan Administrator on May

5, 2014, along with a letter in which the Administrator stated that he enclosed "a

copy of Arbitrator Pierson's Award" in the case, and explained that "Arbitration

5

[sic] Pierson has stated that he expects to provide his full Opinion soon." (A-184; A-244-45.)

By letter dated May 6, 2014, TZC sought to appeal the First Award pursuant to the Plan provision for appeal of final decisions. (A-190; A-245; <u>see also</u> A-63 (Plan Art. V, § 13).) In an ensuing letter, the Plan Administrator stated that TZC "has filed a timely appeal of the decision of Arbitrator Pierson," noted that the UBC "is indicated as having been sent a copy of the appeal," and granted TZC's "request that [he] hold the appeal in abeyance pending the receipt of Arbitrator Pierson's full decision." (A-200.)

## D. The Second Award

On May 13, 2014, Arbitrator Pierson issued a twelve-page "OPINION and AWARD" (the "Second Award") (A-22-33.) In the Second Award, Arbitrator Pierson again determined that no previous agreement governed assignment of the disputed formwork. (A-32.) However, purportedly because of his review of a decision that "was not relied upon until a complete review of the April 28, 2014 hearing was undertaken" (<u>see</u> A-30), Arbitrator Pierson reversed himself and now found that there was no established trade practice in the industry or prevailing practice in the locality governing assignment of the disputed formwork (A-32). After considering the factors in Article V, Section 8(c) of the Plan, Arbitrator Pierson assigned the disputed formwork to Carpenters Local 279. (A-31-33.)

In the Second Award, Arbitrator Pierson characterized the First Award as "hasty" (A-29) and "not fully considered at the time" (A-28). This assertion directly contradicts the language of the First Award, in which the Arbitrator explicitly stated (twice) that "The Arbitrator <u>fully considered</u>" the applicable Plan provisions in arriving at his findings. (A-20 (emphasis added).)

E. <u>The District Court Action</u>

On May 22, 2014, the UBC initiated this action by filing its Petition to Enforce First Arbitration Award and Vacate Second Arbitration Award on Grounds It Exceeded Arbitrator's Authority and Memorandum in Support Thereof. (A-7-75.) TZC cross-petitioned to confirm the Second Award. (A-87-93.)

On March 25, 2015, the District Court (Hon. Andrew L. Carter, Jr.) issued a Memorandum and Order Denying Petition to Confirm and Vacate Arbitration Award and Granting Cross-Petition to Confirm Arbitration Award. (A-241-62.) This appeal followed. (A-264-65.)

## SUMMARY OF ARGUMENT

The District Court erred in vacating the First Award and confirming the Second Award. Arbitrator Pierson's First Award was final and should have been enforced because it definitively resolved all of the issues submitted to arbitration. After entry of the First Award, Arbitrator Pierson became <u>functus officio</u> as to the

substantive question before him and lacked the authority to reconsider or amend the First Award. Any authority he retained thereunder was, at most, limited to the issuance of a written decision following the First Award, and did not include the authority to subsequently modify, let alone reverse, the First Award. Consequently, the Second Award should have been vacated because it exceeded the Arbitrator's authority, either in its entirety or to the extent it reversed the First Award.

## STANDARD OF REVIEW

This Court reviews "a district court decision upholding or vacating an arbitration award <u>de novo</u> on questions of law and for clearly erroneous findings of fact." <u>Wackenhut Corp. v. Amalgamated Local 515</u>, 126 F.3d 29, 31 (2d Cir. 1997).

## ARGUMENT

## THE FIRST AWARD SHOULD HAVE BEEN CONFIRMED AND THE SECOND AWARD SHOULD HAVE BEEN VACATED

A court has the power to vacate an arbitration award where the arbitrator exceeded his powers. "The authority of the [arbitrator] is established only through the contract between the parties who have subjected themselves to arbitration, and [an arbitrator] may not exceed the power granted to [him] by the parties in the contract. . . . Where the arbitrator goes beyond that self-limiting agreement between consenting parties, [he] acts inherently without power, and an award

8

ordered under such circumstances <u>must</u> be vacated." <u>Porzig v. Dresdner,</u>

<u>Kleinwort, Benson, N. Am. LLC</u>, 497 F.3d 133, 140 (2d Cir. 2007) (emphasis

added); <u>see also</u> <u>Collins & Aikman Floor Coverings Corp. v. Froehlich</u>, 736 F.

Supp. 480, 484 (S.D.N.Y. 1990) ("an arbitrator cannot re-write a new agreement

for the parties"). The District Court erred in finding that the Arbitrator had not

exceeded his authority in issuing the Second Award. (<u>See</u> A-261.)


A. <u>The Arbitrator Was Not Authorized to Alter the First Award.</u>

      The District Court ruled that the Arbitrator was empowered to reverse

himself in the Second Award based on its determination that a "holistic reading of

the PLA's Article 10, Section 3 requires the Court to conclude that Parties

contracted to arbitrate jurisdictional disputes under the Plan—with the caveat that

the PLA requirement of a short-form and follow-up decision ('the Follow-Up

Clause') applies." (A-255.) In reaching this determination, the District Court

acknowledged that "[i]n construing the clause, the intent of the parties . . . is

controlling." (A-258 (internal quotation marks and citation omitted).)

      Yet the Court below ignored the parties' clear intent. The District Court

found that the "intent of the Parties here—based on the provision's language, the

terms in the relevant agreements (the PLA and the Plan), and the actions of all

involved—was to give the arbitrator the authority to modify a short-term decision

as necessary." (A-258.)[2] However, neither the Plan, nor the PLA, nor any of the facts before the Court provide support for the District Court's decision. Indeed, the "terms in the relevant agreements (the PLA and the Plan)" (see A-258), compel a finding that the Arbitrator was <u>not</u> empowered to issue a second, different Award. The District Court's assertion that the "intent of the Parties to make the initial decision preliminary is also evidenced by reading the PLA in conjunction with the Plan" (A-259) is contradicted by the plain language of those agreements.

      1. <u>The PLA Does Not Authorize the Arbitrator to Modify the First Award.</u>

Under the plain language of the PLA, the Second Award's reversal of the First Award exceeded the Arbitrator's authority. Article 10, Section 3(D) of the PLA provides in full as follows:

> The Arbitrator shall render a <u>short-form decision</u> within 5 days of the hearing based upon the evidence submitted at the hearing, with a <u>written decision</u> to follow within 30 days of the close of hearing.

(A-110 (emphases added).) This provision calls for an initial "short-form decision" issued within 5 days of the hearing followed by a later "written decision" issued within 30 days of the hearing. (<u>Id.</u>) The provision does not permit the arbitrator to

---

[2] The District Court's reference to a "short-<u>term</u> decision" (A-258 (emphasis added)) may be a typographical error for the language of the PLA (concerning, as discussed below, a "short-<u>form</u> decision" (A-110) (emphasis added)). But in any event, the expression "short-term decision" does not appear anywhere in the Plan or PLA. Nothing in the PLA or Plan indicates that the Arbitrator's decision is to be interim or otherwise temporary, as the phrase "short-term" might imply.

change the initial short-form decision in the later written decision, or otherwise

contemplate that the arbitrator could do so.  Nor, again, do any other provisions in

the PLA or the Plan.

The use of the term "short-form" in Article 10, Section 3(D) indicates that

any later decision must be the same in substance as the short-form decision.

"Short-form" commonly means an abbreviated version of the same thing.  See,

e.g., http://en.wiktionary.org/wiki/short_form (defining "short form" as "[a] word

with the same meaning as another formed by removing one or more of the

syllables of the longer word"); http://www.investopedia.com/terms/s/short-form-

report.asp (defining a short-form report as "brief summary," which describes the

"scope . . . and the findings" of an audit and "may be used in conjunction with a

more detailed long form or complete auditor's report"); N.Y. Public Health L. §

1400 (defining "short-form disclosure statement" or "short form" as "an

abbreviated version of the disclosure statement containing such information from

the disclosure statement as the commissioner may require").  Moreover, the PLA

does not designate the first decision as "tentative," "advisory," "preliminary,"

"provisional," "interim," "temporary," or otherwise subject to substantive revision,

though the parties could have used such language had they intended that the

decision could be reversed.  Instead, nothing in the language of the PLA or the

Plan evinces any intent by the parties to permit the later written decision to be materially different from the short-form decision.

As to the second decision, the language of the PLA provision states that the Arbitrator will issue "a <u>written</u> decision to follow" the short-form decision "within 30 days of the close of hearing."  (A-110 (Art. 10 § 3(D)) (emphasis added).)  No more is authorized than that the decision be "written."  In other words, the PLA provides that the parties will receive a swift determination (within 5 days of the hearing) as to the outcome of a jurisdictional dispute so that they can regulate their conduct in the context of a large, complex on-going construction project,[3] and that a writing regarding the determination will follow.

Furthermore, Article 10, Section 6 of the PLA, entitled "No interference with Work," provides in relevant part:

> There shall be no interference or interruption of any kind with the work of the Project . . . while any jurisdictional dispute is being resolved.  The work shall proceed as assigned by the Contractor until finally resolved under the applicable procedure of this Article.  <u>The award shall be confirmed in writing to the involved parties.</u>  There shall be no strike, work stoppage or interruption in protest of any such award.

---

[3] <u>See, e.g.</u>, A-105 (PLA preamble ¶ 1) (thruway authority "desires to provide for the efficient, safe, quality, and timely completion of a construction project to replace the Tappan Zee Bridge").

(A-111) (emphasis added).) Article 10, Section 6 of the PLA makes clear that the "written decision" contemplated in Article 10, Section 3(D) is the <u>confirmation</u> of the Award. It is not a different Award.

2. <u>The Plan Demonstrates that the Arbitrator Was Not Authorized to Modify the First Award.</u>

In addition, the Plan contains no reference to a second award or to any power of the arbitrator to modify—let alone reverse—his or her award.[4] The Plan is a 38-page document setting forth detailed rules and procedures for the resolution of jurisdictional disputes. (A-35-75.) That it makes no reference to any power of the arbitrator to revise—let alone reverse—the decision that he or she must issue shortly after the hearing emphatically demonstrates the parties' intent that no such revision could be made. Had the parties intended to permit substantive alteration or reversal of the arbitrator's award, it is inconceivable that the parties would have failed to say as much in the Plan. As noted, the PLA does not explicitly authorize any such reversal, and indeed expressly indicates that the second decision can only be a confirmation of the short-form decision. (<u>See</u> A-111.) A The Plan's silence concerning any second decision reinforces the necessary conclusion that no power to substantively modify the arbitrator's short-form decision can be inferred from

---

[4] With regard to the issuance of a decision, the Plan, at Article V, Section 7, provides in full: "The Arbitrator shall issue his decision within three (3) days after the case has been closed. The decision of the Arbitrator shall be final and binding on all parties to the dispute." (A-60-61.)

13

the language of the PLA.  The District Court's holding that the PLA language did contain such a power was therefore erroneous.

> 3. <u>The Actions of All Involved Evince an Intention to Be Bound by the First Award.</u>

Finally, at all stages, the "actions of all involved" (<u>see</u> A-258) evince an intention to be bound by the First Award.  Thus, the Arbitrator titled the First Award "AWARD" (A-17), and, in setting forth the First Award, used final and conclusive language.  The Arbitrator stated as follows:

> In consonance with the *proof and with considered judgment*, this Arbitrator hereby *renders, decides, determines* an [sic] issues the following:

> ## AWARD
> ## PLAN Case No. NV 4/14/14

> **1. This Arbitrator *fully considered* Article V, Section 8 (a) and *determined* there is no previous agreement of record . . . which governs the disputed assignment; and, further,**

> **2. This Arbitrator *fully considered* Article V, Section 8 (b) and *determined* there is an established trade practice . . . to govern the assignment of formwork . . . to the Dockbuilders.**

> **3. Because this Arbitrator *made a finding* that the matter is resolved through Article V, Section 8 (b), Article V, Section 8 (c) need not be considered.**

> **4. *The correct assignment of work under the PLANS's standards . . . shall be to the Dockbuilders Local 1556* and, as such, Tappan Zee Constructors LLC shall reassign the work to Dockbuilders, Local 1556.**

5. **The decision shall apply only to the . . . Tappan Zee River Crossing Project.**

(A-20 (italics added, bolding and underlining in original).)

Nothing in the First Award, which the Arbitrator signed under oath (id.), in any way indicates that it is subject to reversal by the Arbitrator. The Arbitrator did not identify his First Award as "tentative" or "interim," he did not reserve jurisdiction to determine any other matter, and he did not leave any question submitted to him open. (See A-17-20) Rather, the language used by the Arbitrator was consistent with the obvious purpose of the jurisdictional dispute resolution mechanism: to quickly and definitively advise the parties of their rights and obligations so that the large-scale construction project could proceed without delay and with certainty. (See A-9 (Pet. ¶ 11); see also, e.g., A-56 (Plan Art. IV, § 1) (providing that "Administrator shall adapt his operations to assure that all cases submitted shall be disposed of as expeditiously as possible"); A-58-59 (Plan Art. V) (setting short time limits for dispute procedures); A-67 (Plan Art. VII, § 2) ("Any decision or interpretation rendered by an arbitrator shall be immediately accepted and complied with by all parties to this Agreement.").) Having announced the issuance of an "AWARD" based upon proof that was "fully considered" (A-17; A-20), the Arbitrator unequivocally determined the jurisdictional question before him, i.e., "[w]hat is the correct assignment of work . . .?" (A-19). His answer was the Dockbuilders. (A-20.) The Arbitrator's conduct

15

reflects an intention that the First Award be considered conclusive as to the jurisdictional issue presented, and contains no hint of any power to reach a different conclusion later.

Likewise, the Plan Administrator, upon receiving the First Award, treated it as a final determination. The Administrator forwarded the First Award to the parties with a letter in which the Administrator explained, "Arbitration [sic] Pierson has stated that he expects to provide his full Opinion soon." (A-184 (emphasis added); see also A-245.) "[F]ull Opinion" does not denote "determinative award" or otherwise indicate that the First Award was subject to substantive revision.

Significantly, TZC also treated the First Award as final. On May 6, 2014, two days after the date of the First Award, TZC sent a letter to the Plan Administrator stating its "intent to appeal the Arbitrator's Award of May 4, 2014" "[i]n accordance with Article 5, Section 13 of the Plan." (A-190; A-245.) Article 5, Section 13 only allows appeals "from a final decision of a Plan Arbitrator." (See A-63 (emphasis added).) Thus, by filing its appeal, TZC acknowledged the finality of the First Award.

Moreover, noting that the "Arbitrator has not issued his full opinion," TZC stated that "[u]pon receipt of his opinion we will detail the basis of the claim that

16

the Arbitrator failed to address the established criteria of Article V, Section 8."[5]
(A-190; A-245 (emphasis added).)  TZC plainly believed that the First Award
finally determined the jurisdictional issue, and it sought the full opinion in order to
"detail the basis of" its appeal.  (Id.)  TZC did not say that it was waiting to see if
the Arbitrator confirmed or finalized his award; all it indicated it was looking for
was further explanation, which would be consistent with the PLA language
providing for a short-form decision followed by a confirmatory written decision as
described above.  In addition, the Plan Administrator, who necessarily has
knowledge of the Plan's procedures, sent a letter stating that TZC "has filed a
timely appeal from the decision of Arbitrator Pierson in the above-referenced
case."  (A-200; A-245.)

In labeling the Second Award "OPINION and AWARD," the Arbitrator
acknowledged that, in addition to the AWARD, which was previously issued on
May 4, the Second Award contained the Arbitrator's "OPINION," i.e., a "written
statement explaining [the adjudicator's] decision in a given case, usu. including the
statement of facts, points of law, rationale, and dicta."  Black's Law Dictionary
1201 (9th ed. 2009).  The Arbitrator's (as well as the Plan Administrator's and

---

[5] The provision under which TZC sought to appeal the First Award, Article V,
Section 13 of the Plan, provides that "[a] request to consider an appeal from a final
decision of the Plan Arbitrator . . . shall include . . . a statement describing the basis
of the claim that the Arbitrator failed to address the established criteria of Article
V, Section 8."  (A-63.)

17

TZC's) reference to the Second Award as an OPINION is consistent with the understanding that it is intended to explain the decision already rendered.

Further, neither party sought to have the <u>Arbitrator</u> modify or reverse the First Award. TZC, at least, would likely have done so if it had believed that the Arbitrator had any such power. Nor did the Plan Administrator advise TZC that the Arbitrator's decision was less than final in response to TZC's notice of its intent to appeal. The Plan Administrator did not, for example, say that TZC's appeal was premature; rather, as noted, it stated that the appeal was timely. (<u>See</u> A-200.) In this regard as well, the parties' conduct reflects that no revision of the First Award was possible.

The District Court's conclusion that the parties' behavior supported the issuance of a written decision that was substantially different from the short-form decision was thus in error.

B. <u>The District Court's Interpretation Is Unreasonable as Applied to the Construction Industry.</u>

The District Court's interpretation is unreasonable as applied in the construction industry. The purpose of the initial short-form decision is to allow disputed work to be assigned quickly in order to keep a project moving on schedule. (<u>See</u> A-111(PLA Art. 10, § 6) ("There shall be no strike, work stoppage or interruption in protest of any such award.").) Accordingly, the short-form

18

decision is to be rendered "within 5 days of the hearing . . . with a written decision to follow within 30 days of the close of hearing." (A-110.) Permitting an arbitrator to reverse course <u>25 days later</u> would render the initial short-form order worthless, because it could not be relied upon by the parties.[6] The District Court ignored the practical implications of its ruling.

Thus, while the District Court correctly noted that "[c]ourts disfavor contractual interpretations that render clauses meaningless" (A-255), the District Court's interpretation renders the "short form" clause—which is intended to quickly advise the parties of the resolution of the jurisdictional dispute—of no effect. <u>See</u> <u>Galli v. Metz</u>, 973 F.2d 145, 149 (2d Cir. 1992) (stating "an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect") (internal quotation marks and citations omitted). As such, the District Court's interpretation should be rejected. <u>See</u> <u>id.</u> (stating "when interpreting [a] contract we must consider the entire contract and choose the interpretation . . . which best accords with the sense of the remainder of the contract") (internal quotation marks and citations omitted).

---

[6] Indeed, the Plan requires that "[a]ny decision or interpretation rendered by an arbitrator shall be <u>immediately accepted and complied with by all parties</u> subject to this Agreement." (A-67 (Plan Art. VII, § 2) (emphasis added).)

C. The Arbitrator Was *Functus Officio* as to the Dispositive Issues After the First Award.

This Court has held that "as a general rule, once an [arbitrator] decides the submitted issues, [he] becomes functus officio and lacks any further power to act." Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987). Similarly, the Ninth Circuit has analyzed the doctrine of functus officio as follows:

> It is [a] fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the subject matter of the arbitration. The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.

McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, 686 F.2d 731, 733-34 (9th Cir. 1982) (citations omitted); see also Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 331-32 (3d Cir. 1991) (stating "as a general rule, once an [arbitrator] renders a decision regarding the issues submitted, [he] becomes functus officio and lacks any power to re-examine that decision"). Here, Arbitrator Pierson was functus officio as to the substantive issues after he issued the First Award, and therefore was powerless to reverse himself in the Second Award.

1.  The Arbitrator Fully Resolved the Jurisdictional Issue Presented.

In the First Award, the Arbitrator stated that "the following issue was presented" for determination:

**ASSIGNMENT OF JURISDICTION**

**What is the correct assignment of work under the PLAN's standards, as amended, for "formwork from the top of the pile caps up to and including the pier caps, and formwork for all columns including the main span tower forms when over water on the Tappan Zee Hudson River Crossing Project?"**

(A-19.)

Answering that question, in the First Award, the Arbitrator unambiguously determined that the correct assignment of work was to the Dockbuilders. (A-20.) Quoting the same language as set forth in the issue presented, the Arbitrator determined as follows:

**The correct assignment of work under the PLAN's standards, as amended, for application of "formwork for all columns including the main span tower forms when over water" on "The Tappan Zee Hudson River Crossing Project" shall be to the Dockbuilders Local 1556 and, as such, Tappan Zee Constructors LLC shall reassign the work to Dockbuilders, Local 1556.**

(A-20.)

Having so determined, there was no further determination to be made. The Arbitrator was therefore <u>functus officio</u> to determine, in the Second Award, that the work should be assigned to Carpenters Local 279, because he had already made

21

the only determination he was empowered to make pursuant to the parties'
agreement.[7]  See Local 338, RWDSU v. Farmland Dairies, Inc., 89 Fed. App'x
748, 749 (2d Cir. 2003) (stating "[t]he parties stipulated a narrow question for
resolution at arbitration, and, by all appearances, that question was resolved," and
applying the functus officio doctrine).

Moreover, that the First Award fully resolved the jurisdictional issue before
the Arbitrator is made clear by his recitation of the issue in the Second Award,
where he set forth the identical issue as in the First Award.  (Compare A-19 with
A-24.)  He simply came to a different result.  (Compare A-20 with A-33.)

Although the Arbitrator clearly resolved the jurisdictional issue before him,
the Court below stated that "it appears that the May 4th Award addressed both of
the issues submitted by Parties [i.e., TZC's procedural challenge and the
substantive jurisdictional issue] definitely enough so that the rights and obligations
of each did not stand in need of further adjudication" (A-252-53), and further
stated, "[i]f analysis ended here, the May 4th Award would likely be confirmed as
final" (A-253).  But, the Court found, the parties "intended Arbitrator Pierson
retain the ability to modify the May 4th Award as necessary within the 30-day

---

[7] To the extent that the District Court identifies a procedural issue presented by
TZC—insofar as TZC challenged the dispute as untimely (A-252)—the District
Court determined that "Arbitrator Pierson indicated that he did not have the
jurisdiction to decide such procedural issues under the Plan by proceeding to
consider only the 'substantive' criteria" (A-245 n.4).

period allotted by the PLA." (A-260.) This assertion, central to the District

Court's ruling, is without support in the record.

> ### 2. No Exception to the *Functus Officio* Doctrine Is Warranted Here.

This Court has explained:

> [A]bsent an agreement by the parties to the contrary, "once arbitrators have finally decided the submitted issues, they are, in common-law parlance, 'functus officio,' meaning that their authority over those questions is ended." Trade & Transp., Inc. v. Natural Petroleum Charterers Inc., 931 F.2d 191, 195 (2d Cir. 1991). Second, even after rendering an award, an arbitrator retains limited authority to "correct a mistake which is apparent on the face of [the] award." [Colonial Penn, 943 F.2d at 332] (internal quotation omitted). "The exception for mistakes apparent on the face of the award is applied to clerical mistakes or obvious errors in arithmetic computation." Id. at 332 (citation omitted).

Hyle v. Doctor's Assocs., 198 F.3d 368, 370 (2d Cir. 1999).

None of the authority cited by the District Court supports the notion that the

Arbitrator's actions here fall within the scope of the narrow exceptions to the

functus officio doctrine; i.e., the later written decision did not correct clerical,

typographical or computation errors. (See A-257-258; A-260, and cases cited

therein.) Consequently, the Second Award exceeded the arbitrator's authority.

For example, T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d

329 (2d Cir. 2010), relied upon by the District Court, is inapposite. In that case,

which concerned a dispute over allegedly defective steel pipe, the arbitrator issued

a final award, and then amended it after "[b]oth parties . . . petitioned the arbitrator

<u>to amend</u> the Original Award pursuant to" the arbitration rules governing the matter.  <u>Id.</u> at 333 (emphasis added).  Here neither party sought to have the Arbitrator reverse his Award; as shown above, there was no basis for any belief that he could do so.

Moreover, as this Court emphasized, the parties in <u>T.Co. Metals</u> had explicitly authorized the arbitrator to modify the award by adopting the International Center of Dispute Resolution ("ICDR") Rules permitting the arbitrator to "correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award."  592 F.3d at 336 (quoting ICDR Art. 30(1)).   Neither the PLA nor the Plan contains any language authorizing a correction or other modification of the Arbitrator's initial award.

Further, the Court's <u>T.Co. Metals</u> ruling depended on the fact that the parties had <u>also</u> authorized the arbitrator to interpret the scope of his power, under the ICDR Rules, to modify his initial award.  Indeed, as this Court ruled, the parties had given the arbitrator this authority in two ways: first, by "directly petitioning the arbitrator to amend the Original Award," and second, by adopting the ICDR Rules which "themselves contemplate the arbitrator making such interpretive decisions in the first instance."  <u>Id.</u> at 344.  The Court concluded, based on this double authorization, that the parties had "displayed clear and unmistakable intent

24

to submit the question [of his corrective powers under the ICDR Article 30(1)] to the arbitrator," and that it accordingly had to defer to the arbitrator's decision on that point. Id.

Here, there is nothing to show any such intent—let alone a "clear and unmistakable intent"—to authorize the Arbitrator to interpret any power to modify his award (a power he lacked, as shown above). Thus even if the Arbitrator could be construed to have engaged in any such interpretation, deference to that interpretation would be inappropriate.

Further, the corrective authority that was interpreted by the arbitrator in T.Co. Metals was the power to correct clerical errors. There is no interpretation that could find the Arbitrator's Second Award here to constitute correction of a clerical error; rather, as noted, it was a reversal of the First Award.

T.Co. Metals thus provides a stark counterexample to the instant case. There, the arbitrator was petitioned, and expressly authorized by agreement, to modify his initial award. That was not the case here. Further, in that case the arbitrator was empowered to, and did interpret the scope of his power to modify his award, and the Court was required to defer to that interpretation. That is not the case here either. T.Co. Metals thus stands as an example of the narrow circumstances in which an arbitrator can modify an award that determines the issues presented. Those circumstances are absent here.

## CONCLUSION

For the foregoing reasons, the UBC respectfully requests that this Court vacate the Judgment of the District Court, and direct the District Court to enforce the First Award entered by Arbitrator Pierson dated May 4, 2014 and vacate the Second Award entered by Arbitrator Pierson dated May 13, 2014.

Dated:  New York, New York
        May 19, 2015

Respectfully submitted,

DECARLO & SHANLEY

/s/ Daniel M. Shanley
Daniel M. Shanley
533 S. Fremont Avenue, 9th Floor
Los Angeles, California 90071
Telephone:  (213) 488-4100
Facsimile: (213) 488-4180
dshanley@deconsel.com

 /s/ James M. Murphy
SPIVAK LIPTON LLP
James M. Murphy
Gillian Costello
1700 Broadway
New York, New York 10019
Telephone: (212) 765-2100
Facsimile: (212) 765-8954
jmurphy@spivaklipton.com
gcostello@spivaklipton.com

*Counsel for United Brotherhood of
Carpenters and Joiners of America*

26