15-1002
*United Brotherhood of Carpenters v. Tappan Zee Constructors, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: August 19, 2015     Decided: October 20, 2015)

Docket No. 15-1002

————————

UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA,

*Petitioner-Appellant,*

-v.-

TAPPAN ZEE CONSTRUCTORS, LLC,

*Respondent-Appellee.*

————————

Before:

RAGGI AND WESLEY, *Circuit Judges*.[1]

————————

---

[1] Judge Cabranes was initially assigned to this matter and subsequently recused himself. Pursuant to this Court's Internal Operating Procedure E, after a matter has been assigned to a three-judge panel, if for any reason a panel judge ceases to participate in consideration of the matter, the two remaining judges may decide the matter if they agree.

Appellant United Brotherhood of Carpenters and Joiners of America, on behalf of itself and local unions Dockbuilders Local 1556 and Carpenters Local 279, appeals from a judgment entered on March 31, 2015, in the United States District Court for the Southern District of New York (Carter, *J.*). Before the District Court, Appellant sought (1) enforcement of an initial arbitration award issued on May 4, 2014; and (2) vacatur of a subsequent award issued on May 13, 2014. Appellee cross-petitioned seeking enforcement of the award issued on May 13, 2014. We hold that, absent any provision in the arbitration agreement to the contrary, the arbitrator had the authority to determine that he could issue a second decision reaching a result directly contrary to the earlier award. We therefore AFFIRM the District Court's judgment denying the Appellant's petition and granting the Appellee's cross-petition.

> JAMES M. MURPHY, DeCarlo & Shanley, Los Angeles, CA (Daniel M. Shanley, Spivak Lipton LLP, New York, NY, *on the brief*), *for Petitioner-Appellant United Brotherhood of Carpenters and Joiners of America.*
>
> WILLIS J. GOLDSMITH (Joshua Grossman, *on the brief*), Jones Day, New York, NY, *for Respondent-Appellee Tappan Zee Constructors, LLC.*

——————

WESLEY, *Circuit Judge*:

This case arises from the disputed assignment of certain construction work on the Tappan Zee Hudson River Crossing Project (the "Project") to replace the Tappan Zee Bridge across the Hudson River in New York. The work is governed by the New York State Thruway Authority Project Labor Agreement Covering

the Tappan Zee Hudson River Crossing Project (the "Project Labor Agreement" or "PLA").

Appellee Tappan Zee Constructors, LLC ("TZC") was awarded the contract to design and build the Project on December 17, 2012. After winning the contract, TZC divided assignments for three different categories of formwork between two local unions, Dockbuilders Local 1556 ("Dockbuilders") and Carpenters Local 279 ("Carpenters"), both of which are represented by the Appellant, an umbrella labor organization called the United Brotherhood of Carpenters and Joiners of America ("UBC"). The Dockbuilders were assigned the "formwork, up to and including the pile caps" ("pile formwork"). Joint App. 133. The Carpenters were assigned the "formwork from the top of the pile caps up to and including the pier caps" ("pier formwork") and the "formwork for all columns including the main span tower forms" ("column formwork"). *Id.*

The Dockbuilders disputed the assignment of the pier and column formwork to the Carpenters. Pursuant to Article 10, Section 3 of the PLA, all jurisdictional disputes on the Project are resolved under the National Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan"), the purpose of which is to expeditiously resolve disputes over construction work

3

assignments without strikes, work stoppages, or other disruptions. In accordance with the Plan, UBC submitted the dispute over the assignment of the pier and column formwork to the Plan Administrator on January 13, 2014. The following day, UBC requested and the Plan Administrator agreed to hold in abeyance any action on the dispute while the unions discussed settlement.

During settlement negotiations, the Dockbuilders and the Carpenters agreed that both the pier and column formwork should be assigned to the Dockbuilders. UBC informed TZC of this agreement on April 7, 2014, and on April 14, 2014, the Plan Administrator accordingly directed TZC to reassign the pier and column formwork from the Carpenters to the Dockbuilders.

TZC opposed the unions' settlement agreement. The Dockbuilders' hourly rate of $92.47 is considerably higher than the Carpenters' hourly rate of $70.11; reassignment of the pier and column formwork thus would cause the cost of the Project to increase by a total of nearly $7.3 million. Pursuant to the PLA, any jurisdictional dispute that remains unresolved by initial meetings "shall proceed to final and binding arbitration in accordance with the principles and procedures set forth in the rules of the Plan." Joint App. 109 (PLA Art. 10, Sec. 3(C)). Adhering to PLA procedure, TZC informed the Plan Administrator on April 15,

2014 that it disagreed with the proposed reassignment and requested that the dispute be submitted to arbitration. J.J. Pierson was designated arbitrator of the dispute under the Plan and conducted a hearing on April 28, 2014.

Pursuant to the Plan, in resolving a jurisdictional dispute such as the one here, an arbitrator is required to address three criteria: (a) "whether a previous agreement of record or applicable agreement . . . governs"; (b) "if the Arbitrator finds that the dispute is not covered by an appropriate or applicable agreement . . . he shall then consider the established trade practice in the industry and prevailing practice in the locality"; and (c) "if none of the above criteria is found to exist, the Arbitrator shall then consider that because efficiency, cost or continuity and good management are essential to the well being of the industry, the interests of the consumer or the past practices of the employer shall not be ignored." Joint App. 61 (Plan Art. 5, Sec. 8). An arbitrator must "set forth the basis for his decision and . . . explain his findings regarding the applicability of" these three criteria. Joint App. at 62 (Plan Art. 5, Sec. 8). Article 10, Section 3(D) of the PLA required Pierson to "render a short-form decision within 5 days of the hearing based upon the evidence submitted at the hearing, with a written

5

decision to follow within 30 days of the close of the hearing." Joint App. 110 (PLA Art. 10, Sec. 3(D)).

On May 4, 2014, Arbitrator Pierson issued his short-form award in a four-page decision titled "AWARD" ("May 4th Award"). In this decision, Arbitrator Pierson stated that he resolved the matter on the basis of Article 5, Section 8(b) of the Plan. Specifically, he found that "an established trade practice in the industry and prevailing practice in the locality" required assignment of the disputed formwork to the Dockbuilders. Joint App. 20. On May 5, 2014, the Plan Administrator forwarded the decision to the parties under a transmittal letter enclosing "a copy of Arbitrator Pierson's Award" and explaining that "Arbitration [sic] Pierson has stated that he expects to provide his full Opinion soon." Joint App. 184.

On May 6, 2014, TZC notified the Plan Administrator of its intent to appeal the arbitrator's decision. The Plan Administrator responded acknowledging TZC's "timely appeal from the decision of Arbitrator Pierson" and granting TZC's request to "hold the appeal in abeyance pending the receipt of Arbitrator Pierson's full decision." Joint App. 200.

6

On May 13, 2014, Arbitrator Pierson issued a twelve-page decision titled "OPINION and AWARD" ("May 13th Award"). In direct contradiction to the May 4th Award, Arbitrator Pierson concluded that "*no established trade practice* nor *prevailing practice in the locality*" governed assignment of the disputed formwork. Joint App. 32 (emphasis in original). Thus, the dispute could not be resolved based on the criteria set forth in Article 5, Section 8(b) of the Plan, and Arbitrator Pierson proceeded to consider the criteria under Section 8(c). Pursuant to Section 8(c), he concluded that TZC properly assigned the disputed formwork to the Carpenters based on the potential savings of more than $7 million. Accordingly, Arbitrator Pierson assigned the disputed formwork to the Carpenters, not the Dockbuilders.

Arbitrator Pierson's later decision set out the basis for his authority to change his mind between the May 4th Award and the May 13th Award:

> [A]n arbitrator is vested with confined authority under the provisions of the Plan and the controlling criteria of Article V, Section 8. The stated criteria does [sic] not conflict with the letter or spirit of Article 10, Section 3 of the present PLA. As recognized, the criteria track each other.
>
> Likewise, as both the administrative procedures and contract language direct, once the parties proceed to a final and binding arbitration, the Arbitrator is required to render a short-form decision within five (5) days of the hearing and, thereafter, follow with a

7

written decision, based on the evidence submitted at the hearing, within thirty (30) days.

Joint App. 28. Arbitrator Pierson explained that the May 4th Award, which resolved the dispute in favor of the Dockbuilders on the basis of an established trade practice under Article 5, Section 8(b) of the Plan, was "not fully considered at the time" and "hasty, as further review of the evidentiary record revealed." Joint App. 28–29. In particular, in making that short-form decision he failed to consider a prior arbitration decision in which he determined that there was no established trade practice in the industry for such formwork. *Id.* at 30. With the absence of an established trade practice duly considered, Arbitrator Pierson concluded that the cost efficiency of assigning the work to the Carpenters supported resolving the dispute in favor of TZC.

The Plan Administrator forwarded the May 13th Award to the parties under a transmittal letter referring to the decision as "Arbitrator Pierson's full opinion and award." Joint App. 204. UBC did not appeal, but instead brought an action on May 22, 2014 in the Southern District of New York seeking to enforce the May 4th Award and vacate the May 13th Award, arguing that the

8

arbitrator was without authority to alter the May 4th Award.[2] TZC answered and cross-petitioned to confirm the May 13th Award. On March 25, 2015, the District Court issued a Memorandum and Order denying UBC's petition and granting the cross-petition. The District Court found that the dispute was governed by the PLA Article 10, Section 3 requirement that the arbitrator issue a short-form decision within 5 days of the hearing and a written decision within 30. In light of this requirement, the District Court concluded the May 4th Award "was not final" and that Arbitrator Pierson "did not exceed his authority by issuing the May 13th Award." Joint App. 261. Judgment was entered on March 31, 2015; UBC timely appealed.

## DISCUSSION[3]

Arbitration is fundamentally "a matter of contract." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013). "The scope of an arbitrator's authority thus 'generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission.'" *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (quoting *Synergy Gas Co. v. Sasso*,

---

[2] Because grounds for an appeal are extremely limited under the Plan and the Rules, UBC's attempt to appeal would have been futile.

[3] In analyzing a district court's decision to confirm or vacate an arbitration award, we review legal rulings *de novo* and factual findings for clear error. *ReliaStar Life Ins. Co. of New York v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009).

9

853 F.2d 59, 63–64 (2d Cir. 1988)). "[C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Am. Exp. Co.*, 133 S. Ct. at 2309 (alteration in original) (emphasis omitted) (citations and internal quotation marks omitted). Thus, our principal inquiry is "whether the arbitrator's award draws its essence from the agreement to arbitrate." *ReliaStar*, 564 F.3d at 85 (internal quotation marks omitted). "We will not reverse an arbitral award that draws its essence from the agreement, even if it contains factual errors or erroneous interpretations of contract provisions." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 896 (2d Cir. 1997).

"A court's review of an arbitration award is . . . severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (citations and internal quotation marks omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn

his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "Under our heightened standard of deference, vacatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 222 (2d Cir. 2002). This judicial deference reflects the principle that "[t]he remedy for unduly broad arbitral powers is not judicial intervention: it is for the parties to draft their agreement to reflect the scope of power they would like their arbitrator to exercise." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 345 (2d Cir. 2010).

Applying these principles to this case, we conclude that we must defer to the arbitrator's interpretation of Article 10, Section 3(D) of the PLA as allowing him to alter the short-form award when rendering his written opinion. This court has consistently accorded deference to an arbitrator's interpretation of a contract where, as here, it appears that the parties intended to submit that issue to him. In *T.Co Metals*, we deferred to an arbitrator's interpretation of an agreement provision permitting him to correct clerical and computational errors

11

in awards, as allowing him to reconsider a previous award and make revisions that went beyond the computational. 592 F.3d at 346. In *Jock v. Sterling Jewelers, Inc.*, we concluded that the arbitrator did not exceed her authority in determining that she could authorize plaintiffs to seek class certification, despite the lack of any express provision in the agreement authorizing that action. 646 F.3d 113, 124 (2d Cir. 2011). In *Local 1199, Drug, Hosp. & Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, we analyzed not whether the arbitrator accurately interpreted the contract clause at issue, but instead whether the arbitrator's interpretation of that clause was consistent with the authority granted him by the arbitration agreement. 956 F.2d 22, 26 (2d Cir. 1992). We noted in *Local 1199* that "[o]ur task is to determine whether the arbitrator interpreted an arguably ambiguous contractual provision in light of the intent of the parties, or merely administered his own brand of justice in contradiction of the clearly expressed language of the contract." *Id.*

The parties here do not dispute that the PLA required Arbitrator Pierson to issue two decisions. Article 10, Section 3(D) of the PLA provides that "[t]he Arbitrator shall render a short-form decision within 5 days of the hearing based upon the evidence submitted at the hearing, with a written decision to follow

within 30 days of the close of hearing." Joint App. 110. The provision is arguably ambiguous, and each party urges us to accept one of two competing interpretations that would support their respective arguments. TZC reads Article 10, Section 3(D) as "expressly authoriz[ing] an arbitrator to issue a preliminary decision . . . to be followed by a final written decision." Appellee Br. 16. UBC bristles at TZC's use of the terms "final" and "preliminary" and argues that "short-form" as used in this provision means "an abbreviated version of the same thing." Appellant Br. 11; Reply Br. at 4–5. UBC contends further that Arbitrator Pierson became *functus officio* and thereby lost his authority to act after issuing his first decision. *See* Appellant Br. 20 (citing *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987) (stating that "as a general rule, once an [arbitrator] decides the submitted issues, [he] becomes *functus officio* and lacks any further power to act" (internal quotation marks omitted))).

Under our precedent discussed above, however, our task is not to adopt either party's interpretation or to craft our own. Rather, our task is to determine whether "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *ReliaStar*, 564 F.3d at 86 (quoting *United Paperworkers*, 484 U.S. at 38). Here, the May 13th Award makes clear that

13

Arbitrator Pierson was construing Article 10, Section 3(D) of the PLA and Article 5, Section 8 of the Plan in reaching a different conclusion than that reached in his May 4th Award: he recited his obligation under Section 3(D) to render both a short-form decision and a later written decision, as well as his obligation to consider fully the three criteria set forth in Section 8. It was because he concluded that he had initially failed to consider certain evidence under the Section 8 criteria that he rendered a written decision different from his short-form decision.

Notably, the PLA does not define the term "short-form," nor does it specifically require that the second decision echo the result of the first. Absent any such definitions or provisions, Arbitrator Pierson had the authority to interpret Article 10, Section 3(D) as allowing him to change or alter the first award in order to ensure full consideration of the three criteria required under Article 5, Section 8 of the Plan. While the ultimate result was perhaps a bit unusual, it was not a declaration of the arbitrator's "own brand of justice in contradiction of the clearly expressed language of the contract." *Local 1199*, 956 F.2d at 26; *see also Westerbeke*, 304 F.3d at 222 ("Under our heightened standard of deference, vacatur for manifest disregard of a commercial contract is appropriate

14

only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract.").

In urging otherwise, UBC contends that this court should not afford deference to the arbitrator's interpretation of Article 10, Section 3(D) because neither party submitted the issue of the scope of this section to the arbitrator by requesting that he reverse his short-form decision. We are not persuaded. As explained in *T.Co Metals*, in determining the "level of deference" to which an arbitrator's contract interpretation is entitled, a court considers whether the parties intended to submit the issue to an arbitrator, or whether the issue is one for which the court applies a presumption in favor of or against arbitration. *T.Co Metals*, 592 F.3d at 344 (concluding that parties evinced "clear . . . intent to submit the question to the arbitrator" by requesting that arbitrator amend original award). Here, it is undisputed that the parties submitted the jurisdictional dispute regarding formwork to the arbitrator to be resolved pursuant to the procedures set forth in the Plan and the PLA, the latter of which explicitly required him to issue two separate decisions. To the extent resolution of the

15

dispute required the arbitrator to interpret that provision of the PLA, this interpretive issue was part of the larger dispute submitted to the arbitrator.

Moreover, there is no contention here that the scope of Article 10, Section 3(D) is the type of "gateway" question that the parties intended a court, rather than an arbitrator, to decide. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (stating that if parties intended court to decide question of arbitrability, court should not afford arbitrator's decision "considerable leeway" but should rather review issue "independently"); *accord Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013) (explaining that "certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy . . . are presumptively for courts to decide," and an arbitrator's determination of those matters is therefore subject to *de novo* review). The arbitrator's interpretation of the PLA is therefore entitled to deference.

Finally, UBC's argument that Arbitrator Pierson became *functus officio* after issuing his first decision is unavailing. The parties contractually agreed in Article 10, Section 3(D) that the arbitrator would issue two decisions. "The *functus officio* doctrine dictates that, once arbitrators have fully exercised their

authority to adjudicate the issues submitted to them, their authority over those questions is ended, and the arbitrators have no further authority, absent agreement by the parties, to redetermine th[ose] issue[s]." *T.Co Metals*, 592 F.3d at 342 (alterations in original) (internal quotation marks omitted). Arbitrator Pierson could not possibly have been *functus officio* before he "fully exercised [his] authority to adjudicate the issues submitted to [him]" by fulfilling the parties' agreed-upon requirement that he issue a second decision.

## CONCLUSION

Because we must defer to the arbitrator's interpretation of the rules by which the parties agreed the arbitration would be conducted, and because the arbitrator interpreted the rules as allowing him to fashion the second decision as he saw fit, the order of the District Court confirming the May 13th Award and vacating the May 4th Award is AFFIRMED.

17